Sebastian L. Miller (SBN 265793)
sebastian@sebastianmillerlaw.com
SEBASTIAN MILLER LAW, P.C.
3785 Via Nona Marie, Suite 203-E
Carmel, CA 93923
Telephone: 408.348.1728
Facsimile:  408.716.3149

Attorneys for Plaintiff
BEIJIA BECKETT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BEIJIA BECKETT,<br><br>                    Plaintiff,<br><br>    v.<br><br>ROKU, INC.,<br><br>                    Defendant. | Case No. 18-cv-7016<br><br>Complaint For Damages:<br><br>(1) Discrimination In Employment Due To Plaintiff's National Origin and Race (Cal. Gov. Code. § 12940(a))<br><br>(2) Discrimination In Employment Due To Plaintiff's National Origin and Race (42 U.S.C. § 2000e-2)<br><br>(3) Pay Discrimination Because Of Plaintiff's Sex (29 U.S.C. § 206(d))<br><br>(4) Pay Discrimination Because Of Plaintiff's Sex (Cal. Labor Code § 1197.5(a))<br><br>(5) Pay Discrimination Because Of Plaintiff's Race And Ethnicity (Cal. Labor Code § 1197.5(b))<br><br>DEMAND FOR JURY TRIAL |

## I.      INTRODUCTION

1.      This action concerns two related types of discrimination that Plaintiff Beijia Beckett experienced while she was employed by Defendant Roku, Inc. ("**Roku**").

2.      The first type of discrimination occurred when Roku decided to terminate Ms. Beckett's employment on August 1, 2018.  Ms. Beckett alleges that her manager preferred to work with

employees who shared his race and national origin (Indian/South Asian) and that this preference was ultimately a substantial motivating factor in his decision to discharge Ms. Beckett, who is Chinese in her race and national origin. Discharging Ms. Beckett because of her national origin and race constitutes discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("*Title VII*") and the California Fair Employment and Housing Act, Cal. Gov. Code § 12940(a) ("*FEHA*").

3.      The second type of discrimination relates to the compensation that Ms. Beckett received during at least the two years prior to her discharge. Ms. Beckett alleges that she was paid less than male employees at Roku who were engaged in work that required equal skill, effort, and responsibility to hers and that was performed under similar working conditions. This pay disparity violates the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("*Federal EPA*"). It also violates the California Equal Pay Act, Cal. Labor Code § 1197.5(a) ("*California EPA*"). Finally, Ms. Beckett alleges that she was paid less than employees who were Indian/South Asian in their race and ethnicity and who engaged in work that, when viewed as a composite of skill, effort, and responsibility, was substantially similar to hers. This violates the California Fair Pay Act, Cal. Labor Code § 1197.5(b) ("*California FPA*").

## II.      PARTIES

4.      Plaintiff Beijia Beckett is a resident of Saratoga, California. Throughout the period that is relevant to this lawsuit, she was employed by Roku in Los Gatos and Saratoga, California.

5.      Defendant Roku, Inc. is a Delaware corporation but its main base of operations is in Los Gatos, California. Since the company's nerve center is in Santa Clara County, California it is a resident of California. At all relevant times, Roku has had more than five hundred employees.

## III.      JURISDICTION

6.      Ms. Beckett alleges claims for discrimination under Title VII and the Federal EPA. Title VII is a federal statute. A sub-section of Title VII, 42 U.S.C. § 2000e-5(f)(3), expressly provides United States district courts with jurisdiction over claims made thereunder. The Federal EPA—29 U.S.C. § 216(b)—contains a similar grant of jurisdiction to federal district courts. Therefore, pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Ms. Beckett's second and third claims for relief

under, respectively, Title VII and the Federal EPA.

7. Ms. Beckett also alleges claims under FEHA, the California EPA, and the California FPA. Ms. Beckett's claims under FEHA arise out of the same conduct by Roku that she alleges violated Title VII. Ms. Beckett's claims under the California EPA arise out of the same conduct by Roku that she alleges violated the Federal EPA. Ms. Beckett's claims under the California FPA arise out of conduct that is closely related to the conduct that she alleges violated the Federal EPA and Title VII. Accordingly, Ms. Beckett's claims under FEHA, the California EPA, and the California FPA are part of the same case and controversy as her claims under Title VII and the Federal EPA. So, this Court has supplemental jurisdiction over Ms. Beckett's FEHA and California Labor Code claims pursuant to 28 U.S.C. § 1367.

**IV.    VENUE**

8. 42 U.S.C. § 2000e-5(f)(3) provides that an action under Title VII may be filed in any federal judicial district in the state in which: (i) the unlawful employment practice is alleged to have been committed; (ii) the employment records relevant to such practice are maintained and administered; or (iii) the aggrieved person would have worked but for the alleged unlawful employment practice.

9. The United States District Court for the Northern District of California is the appropriate venue for this case under each of those standards. Ms. Beckett alleges that she experienced discrimination in violation of Title VII while she was employed in Los Gatos, California. Ms. Beckett would have continued to work in Los Gatos but for Roku's decision to fire her for an unlawful reason. Most of the relevant records and witnesses are in Los Gatos or elsewhere in Santa Clara County. Last, Roku resides in the Northern District of California pursuant to 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(d) and a substantial part of the events at issue in this case occurred in this judicial district.

**V.    INTRA-DISTRICT ASSIGNMENT**

10. Pursuant to Civil L.R. 3-2(d), this action should be assigned to the San Jose Division of the United States District Court for the Northern District of California because a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Los Gatos, California—

which is in Santa Clara County.

## VI.    MS. BECKETT WAS FIRED FOR A DISCRIMINATORY REASON

11.    Ms. Beckett is a naturalized U.S. citizen, but she was born, raised and educated in China. Her national origin is Chinese, as are her race and ethnicity.

12.    Roku hired Ms. Beckett in April 2015 and assigned her to work as a "Senior Software Engineer, Data Analysis & Reporting" on the company's Data Engineering team.  When Ms. Beckett was hired, the Data Engineering team was relatively small.  Todd Studenicka managed it and he supervised a total of three software engineers, including Ms. Beckett.

13.    In December 2015, Roku hired Abhijit Pol to serve as "Director of Data Engineering & Advertisement."  Mr. Pol is Indian/South Asian in his national origin, race and ethnicity.  Shortly after Mr. Pol was hired, Roku completed a departmental reorganization.  Mr. Pol was assigned to manage what was formerly Mr. Studenicka's Data Engineering team as well as four other software engineers who worked on the company's Data Management Platform.  The reorganized department was called the Data Engineering & Advertisement ("DEA") department.

14.    Following this reorganization, Mr. Pol grew the DEA team very quickly.  He did so by hiring new employees, often based on referrals from his personal network.  In less than three years, DEA increased from fewer than 10 employees to about 40 employees total.

15.    Ms. Beckett believes that Mr. Pol hired a total of 36 employees between January 2016 and August 1, 2018.  During that time, Mr. Pol's hiring decisions were very skewed toward one racial and ethnic group.  Of the 36 employees he hired, about 30 were of Indian/South Asian descent (roughly 83%).  Mr. Pol's firing decisions showed a similar tilt.  Mr. Pol fired four employees between January 2016 and August 2018.  The race and national origin of three of the employees who were fired— including Ms. Beckett—was something other than Indian/South Asian.

16.    Thus, as DEA grew under Mr. Pol's leadership, the makeup of its employees in terms of race and national origin became homogenous.  In early 2016—when Mr. Pol assumed leadership over the DEA—only two of Mr. Pol's direct reports were of Indian/South Asian race and national origin and

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES

six were from elsewhere. These numbers had flipped by July 2018. DEA then consisted of roughly eight non-Indian/South Asian employees versus 32 employees of Indian/South Asian race and national origin. At the time Ms. Beckett was fired, DEA was roughly 80% Indian/South Asian. This is a stark contrast to the race and national origin of Roku's overall employee population, which Ms. Beckett believes is less than 20% Indian/South Asian.

17. On July 31, 2018, Mr. Pol requested that Ms. Beckett meet with him the following day. He did not identify the topic of the meeting. The meeting occurred as scheduled but, in addition to Mr. Pol, Heather Ramirez from Roku's Human Resources department was also present. During that meeting, Mr. Pol told Ms. Beckett that she was being fired, effective immediately. This came as a surprise to Ms. Beckett because she had not previously received a negative performance review and had not been placed on an action or improvement plan of any nature. In explaining why he decided to fire Ms. Beckett, Mr. Pol stated that he wished to "grow the team in a different direction" or words to that effect. He provided no specifics beyond that general statement.

18. Even though Ms. Beckett had not asserted or threatened any kind of claim before she was fired, Roku decided to offer her "Special Consideration" in the amount of $46,666.67 (the "Severance"). The Severance was conditioned on her agreement to sign a general release of claims with various confidentiality provisions. Ms. Ramirez stated that the Severance offer—which was signed by the company's Senior Vice President of Human Resources, Troy Fenner—was very generous, but she did not specify why Roku was offering Ms. Beckett such a large amount of money. Ms. Beckett did not accept the offer of Severance.

19. Ms. Beckett was harmed by Roku's decision to terminate her. She believes she will lose hundred of thousands of dollars because of her discharge. First, she forfeited 1,250 unvested stock options on the date she separated from employment. Those options would have vested if Ms. Beckett had continued her employment with Roku. They were worth more than the Severance based on Roku's average closing stock price during the ninety days that preceded the date of this complaint. Second, Ms. Beckett is not yet re-employed and she faces uncertain job prospects going forward. She has already

1  lost over $40,000 in salary and benefits it will take her at least a few more months to secure replacement

2  employment.  Third, like most unemployed job seekers, Ms. Beckett will lack the bargaining power

3  necessary to negotiate a competitive compensation package.  Thus, in addition to temporary lost wages

4  and forfeited options, Ms. Beckett's salary may be diminished for a long period.

5      20.    For a few reasons, Ms. Beckett believes that Mr. Pol preferred working with employees

6  who are of Indian/South Asian origin and that this preference was a substantial motivating factor for his

7  decision to fire her.

8      21.    First, Mr. Pol's track record in hiring employees clearly suggests that he preferred hiring

9  employees who are of Indian/South Asian national origin and descent.  Ms. Beckett believes that at least

10  83% of the employees who Mr. Pol hired during her tenure with Roku are Indian/South Asian.  Further,

11  75% of the employees who Mr. Pol fired during Ms. Beckett's tenure were not Indian/South Asian in

12  their race and national origin.  These statistics suggest that Mr. Pol engaged in a "stark pattern of

13  discrimination unexplainable on grounds other than [race and national origin]" and, standing alone, the

14  statistics establish a *prima facie* case of discrimination.  *Schechner v. KPIX-TV*, 686 F. 3d 1018, 1024

15  (9th Cir. 2012) (*quoting Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986)).

16      22.    Second, Roku offered a very weak non-discriminatory explanation for its decision to fire

17  Ms. Beckett.  No discipline or warning preceded the termination decision.  And, when justifying the

18  decision to fire Ms. Beckett, Mr. Pol did not say anything beyond that he desired to move in a different

19  direction.  Ms. Beckett is an accomplished software engineer and she had skills to fill any number of

20  different roles on the DEA team or elsewhere at Roku.  If Mr. Pol had asked her to switch focus, she

21  would have agreed.  If he had offered a role elsewhere at Roku, she would have considered it.  Instead,

22  Ms. Beckett was discharged due to subjective, ineffable criteria, which raises an inference of pretext.

23  *See*, *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136-37 (9th Cir. 2003) ("[w]here termination decisions

24  rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted

25  because such evaluations are particularly susceptible of abuse and more likely to mask pretext");

26  *Kitchen v. WSCO Petroleum Corp.*, 481 F. Supp. 2d 1136, 1150-51 (D. Or. 2007) (finding an

27

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES

employer's statement that it was "going in a different direction" was less than compelling and, when combined with other weak reasons for a termination, could mask discriminatory intent).

23.     Third, Mr. Pol did not make the decision to hire Ms. Beckett.  Thus, the "same actor inference" that sometimes rebuts an inference of discrimination does not apply.

24.     Fourth, Ms. Beckett experienced some conduct before she was fired that—with the benefit of hindsight—seems to constitute disparate treatment.  For example, Indian/South Asian employees were routinely allowed to take month-long vacations whereas Mr. Pol chided Ms. Beckett for taking a two-week vacation.  Further, many Indian/South Asian employees received promotions in 2017 and 2018 and none were demoted.  Employees outside that group did not fare nearly as well.  During that same period, at least two were demoted and only one was promoted.

25.     Fifth, Mr. Pol appeared more comfortable speaking and interacting with Indian/South Asian employees and engaging on topics that are closely associated with Indian culture. For instance, Mr. Pol would discuss Bollywood movies and use Hindi words on Roku's internal messaging platform, Slack.  The team would sing Bollywood songs during happy hour events.  Although Diwali was celebrated, other ethnic holidays were not.

## VII.   MS. BECKETT EXPERIENCED PAY DISCRIMINATION BEFORE SHE WAS FIRED

26.     During Ms. Beckett's forty months of employment, she never received a raise, a bonus, or a change in title.  Although DEA has a "black box" compensation system, Ms. Beckett believes she was paid less than similarly-situated male employees and similarly-situated employees of Indian/South Asian race and ethnicity.

27.     First, in the last two years, many male employees received upgrades in their titles.  A better title usually corresponds to increased pay.  Ms. Beckett did not receive similar recognition and neither did any of the other female employees in DEA.

28.     Second, salaries for software engineers have risen throughout Silicon Valley in the past three years.  Ms. Beckett's compensation was never increased to reflect this development.  Most of the employees who Mr. Pol hired in 2016, 2017 and 2018 were men of Indian/South Asian race and

ethnicity.  Specifically, of the 36 employees who Mr. Pol hired prior to August 2018, only six were women (17%).  But, of the four employees Mr. Pol fired, two were women (50%).  Thus, it stands to reason that male employees and employees of Indian/South Asian race and ethnicity were paid at a higher rate than Ms. Beckett.  Similarly, cash bonuses—both annual and upon signing—have become increasingly common.  Ms. Beckett believes similarly-situated male employees and similarly-situated Indian/South Asian employees in DEA received such bonuses, whereas she did not.

29.     Based on the foregoing, Ms. Beckett believes she was paid at least $20,000 per year less than similarly-situated men between 2016 and 2018 and at least $20,000 per year less than similarly-situated employees of Indian/South Asian race and ethnicity during the same time frame.

## VIII.   MS. BECKETT TIMELY EXHAUSTED HER ADMINISTRATIVE REMEDIES

30.     On September 10, 2018, Ms. Beckett filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC").  The EEOC cross-filed her complaint with the California Department of Fair Employment and Housing (the "DFEH").  The complaint indicated that Ms. Beckett: (i) had experienced discrimination because of her race and national origin; and (ii) had been paid less than similarly-situated male employees.  Ms. Beckett received Notices of Right to Sue from both the EEOC and the DFEH on September 11, 2018.  Those Notices of Right to Sue permit her to bring the claims under FEHA and Title VII that are encompassed in this action.  Thus, Ms. Beckett timely exhausted her administrative remedies under FEHA and Title VII and timely filed an action against Defendant following such exhaustion.

## IX.    ALLEGATIONS REGARDING CONDUCT TAKEN WITH RECKLESS DISREGARD FOR TITLE VII AND CONDUCT THAT IS MALICIOUS AND OPPRESSIVE

31.     Ms. Beckett seeks punitive damages based on the conduct by Roku that was malicious and oppressive within the meaning of Cal. Gov. Code § 3294 as well as conduct that was taken with reckless disregard for Ms. Beckett's rights under Title VII.  The conduct at issue is as follows.

32.     First, Roku acted with reckless indifference to Ms. Beckett's federally-protected rights under Title VII when it allowed Abhijit Pol to make employment decisions based, in part, on employees'

races and national origins.  Indeed, Mr. Pol received a promotion to "Senior Director" shortly before he fired Ms. Beckett.  This was after Mr. Pol had made about 40 hiring and firing decisions which, as set forth above, suggested a clear bias in favor of employees who were Indian/South Asian in their race and national origin.  This conduct justifies punitive damages under 42 U.S.C. § 1981a(b)(1) because Roku knew there was a substantial risk that Mr. Pol was causing it to violate Title VII but did nothing to stop him or repudiate his conduct.

33.    Second, Ms. Beckett alleges intentional discrimination by her supervisor.  This conduct is malicious and oppressive because any form of intentional discrimination is despicable and subjects an employee to hardship in conscious disregard of their right to be free from discrimination in employment.

34.    Roku may be liable for punitive damages based on intentional discrimination by one of its managing agents and conduct by other managing agents that ratified that discrimination.  Mr. Pol constituted one of Roku's managing agents in August 2018 because nearly forty employees reported to him, he had largely unchecked authority to hire, fire, promote and demote members of his team, and had the title of "Senior Director."

35.    Further, the decision to fire Ms. Beckett was ratified by at least two of Roku's other managing agents—Heather Ramirez and Troy Fenner.  Mr. Fenner is the company's Senior Vice President of Human Resources.  He signed the severance agreement that Roku offered to Ms. Beckett when the company fired her.  On information and belief, Mr. Fenner exercises substantial independent authority and judgment in his decision-making such that his decisions ultimately determine many of Roku's employee-relations policies, including with respect to discipline, hiring, firing, compensation, and other rules that affect employees' terms and conditions of employment.

36.    Ms. Ramirez is another human resources representative who, again on information and belief, has the authority to set or influence Roku's employee relations policies.  She attended Ms. Beckett's termination meeting, encouraged Ms. Beckett to sign the severance agreement by claiming it was generous, and was apprised of Mr. Pol's history with respect to hiring and firing other employees. After she was fired, Ms. Beckett's counsel delivered a letter to Mr. Fenner and Ms. Ramirez that

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES

identified the discriminatory conduct that is now discussed in this complaint.  On information and belief, neither of Mr. Fenner nor Ms. Ramirez responded to that letter by taking actions to cause Roku to repudiate Mr. Pol's actions.

## FIRST CLAIM FOR RELIEF

### DISCRIMINATION IN EMPLOYMENT DUE TO RACE/NATIONAL ORIGIN

### (Cal. Gov. Code. § 12940(a))

Plaintiff hereby incorporates by reference Paragraphs 1 through 36 of this Complaint as if fully set forth herein and for a first claim for relief alleges as follows.

37.    Plaintiff was employed by Defendant from April 2015 until August 2018.  During that time, Defendant employed hundreds of people and was a covered employer under FEHA and Title VII.  Plaintiff experienced unlawful discrimination when Defendant decided to terminate her employment because a substantial motivating factor for Defendant's decision to fire Plaintiff was her Chinese race and Chinese national origin.  This conduct violated FEHA.  Plaintiff was harmed.  She lost unvested stock options immediately, has lost salary, and will continue to lose wages and benefits going forward.  She also suffered garden variety non-economic harms.  By engaging in intentional discrimination, Defendant acted with malice and/or oppression.

## SECOND CLAIM FOR RELIEF

### DISCRIMINATION IN EMPLOYMENT DUE TO RACE/NATIONAL ORIGIN

### (42 U.S.C. § 2000e-2)

Plaintiff hereby incorporates by reference Paragraphs 1 through 37 of this Complaint as if fully set forth herein and for a second claim for relief alleges as follows.

38.    Plaintiff was employed by Defendant from April 2015 until August 2018.  During that time, Defendant employed hundreds of people and was a covered employer under FEHA and Title VII.  Plaintiff experienced unlawful discrimination when Defendant decided to terminate her employment because a substantial motivating factor for Defendant's decision to fire Plaintiff was her Chinese race and Chinese national origin.  This conduct violated Title VII.  Plaintiff was harmed.  She lost unvested

stock options immediately, has lost salary, and will continue to lose wages and benefits going forward. She also suffered garden variety non-economic harms.  By engaging in intentional discrimination, Defendant acted with malice, oppression or reckless disregard for its legal obligations under Title VII.

### THIRD CLAIM FOR RELIEF

### PAY DISCRIMINATION BECAUSE OF SEX

### (29 U.S.C. § 206(d))

Plaintiff hereby incorporates by reference Paragraphs 1 through 38 of this Complaint as if fully set forth herein and for a third claim for relief alleges as follows.

39.     Plaintiff is a woman.  Plaintiff was employed at Defendant's office in Santa Clara County, California.  Between January 2016 and August 2018, Plaintiff worked for Defendant's DEA team.  During that time, there were dozens of other employees on the DEA team, including many male employees.  Between January 2016 and August 2018, the work in which Plaintiff was engaged was equal to the work in which male employees on the DEA team were engaged.  Specifically, Plaintiff and those male employees performed work that required equal skill, effort, and responsibility and performed that work under similar working conditions.  Male employees, however, were paid more than Plaintiff. This differential was not based on a factor other than sex.  Plaintiff alleges she was paid at least $20,000/year less than similarly-situated male employees and that Defendant acted willfully in violating 29 U.S.C. § 206(d).  As a remedy for this pay discrimination, Plaintiff seeks unpaid wages over a three-year period as well as liquidated damages.

### FOURTH CLAIM FOR RELIEF

### PAY DISCRIMINATION BECAUSE OF SEX

### (Cal. Labor Code § 1197.5(a))

Plaintiff hereby incorporates by reference Paragraphs 1 through 38 of this Complaint as if fully set forth herein and for a fourth claim for relief alleges as follows.

40.     Plaintiff is a woman.  Plaintiff was employed at Defendant's office in Santa Clara County, California.  Between January 2016 and August 2018, Plaintiff worked for Defendant's DEA

team.  During that time, there were dozens of other employees on the DEA team, including many male employees.  Between January 2016 and August 2018, the work in which Plaintiff was engaged was, when viewed as a composite of skill, effort, and responsibility, substantially similar to the work in which male employees on the DEA team were engaged.  Plaintiff performed her work under similar working conditions to those encountered by male employees on the DEA team.  Male employees, however, were paid more than Plaintiff.  This differential was not based on a bona fide factor other than sex.  Plaintiff alleges she was paid at least $20,000/year less than similarly-situated male employees and that Defendant willfully violated Section 1197.5(a) of the California Labor Code.  As a remedy for this pay discrimination, Plaintiff seeks unpaid wages over a three-year period as well as liquidated damages.

## FIFTH CLAIM FOR RELIEF

### PAY DISCRIMINATION BECAUSE RACE AND ETHNICITY

### (Cal. Labor Code § 1197.5(b))

Plaintiff hereby incorporates by reference Paragraphs 1 through 38 of this Complaint as if fully set forth herein and for a fifth claim for relief alleges as follows.

41.     Plaintiff is Chinese in terms of her race and ethnicity.  Plaintiff was employed at Defendant's office in Santa Clara County, California.  Between January 2016 and August 2018, Plaintiff worked for Defendant's DEA team.  During that time, the DEA team had dozens of other members, including many employees who were not Chinese and, instead, were Indian/South Asian in race and ethnicity.  Between January 2017 and August 2018, the work in which Plaintiff was engaged was, when viewed as a composite of skill, effort, and responsibility, substantially similar to the work in which Indian/South Asian employees on the DEA team were engaged.  Plaintiff performed her work under similar working conditions to those employees.  Indian/South Asian employees, however, were paid more than Plaintiff.  This differential was not based on a bona fide factor other than race or ethnicity.  Plaintiff alleges she was paid at least $20,000/year less than similarly-situated Indian/South Asian employees and that Defendant willfully violated Section 1197.5(b) of the California Labor Code.  As a remedy for this pay discrimination, Plaintiff seeks unpaid wages starting on January 1, 2017—when the

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES

California FPA became effective—as well as liquidated damages.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows.

1.  ***On Plaintiff's First Claim For Relief***: (a) economic damages for Plaintiff's lost wages (back pay, front pay, other lost compensation and benefits), according to proof but in an amount that exceeds $100,000 and that may continue to accrue; (b) non-economic damages in an amount according to proof; (c) punitive damages under Cal. Civ. Code § 3294; and (d) reasonable attorney's fees and costs of suit under Cal. Gov. Code § 12965(b).

2.  ***On Plaintiff's Second Claim For Relief***: (a) economic damages for Plaintiff's lost wages (back pay, front pay, other lost compensation and benefits), according to proof but in an amount that exceeds $100,000 and that may continue to accrue; (b) non-economic damages in an amount according to proof and up to the statutory cap under Title VII; (c) punitive damages 42 U.S.C. § 1981a(b)(1) up to the statutory cap under Title VII; and (d) reasonable attorney's fees and costs of suit under 42 U.S.C. § 2000e–5.

3.  ***On Plaintiff's Third Claim For Relief***: (a) unpaid wages under 29 U.S.C. § 206(d) according to proof but in an amount that exceeds $50,000; (ii) liquidated damages under 29 U.S.C. § 216(b) in an amount equal to Plaintiff's unpaid wages; (c) reasonable attorney's fees and costs of suit under 29 U.S.C. § 216(b).

4.  ***On Plaintiff's Fourth Claim For Relief***: unpaid wages according to proof but in an amount that exceeds $50,000, interest thereon, liquidated damages, and reasonable attorney's fees and costs of suit, each under Cal. Labor Code § 1197.5(h).

5.  ***On Plaintiff's Fifth Claim For Relief***: unpaid wages according to proof but in an amount that exceeds $40,000, interest thereon, liquidated damages, and reasonable attorney's fees and costs of suit, each under Cal. Labor Code § 1197.5(h).

6.  Pre-judgment and post-judgment interest; and

7.  Such other and further legal and equitable relief as the Court deems just and proper.

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES

RESPECTFULLY SUBMITTED,

Dated: November 19, 2018                    SEBASTIAN MILLER LAW, P.C.


By:    */s/ Sebastian L. Miller*
                                            Sebastian L. Miller
                                            Attorneys for Plaintiff
                                            BEIJIA BECKETT


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury on all issues as may be so tried.


Dated: November 19, 2018                    SEBASTIAN MILLER LAW, P.C.


By:    */s/ Sebastian L. Miller*
                                            Sebastian L. Miller
                                            Attorneys for Plaintiff
                                            BEIJIA BECKETT

PLAINTIFF BEIJIA BECKETT'S COMPLAINT FOR DAMAGES